**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellants,**

v.

**Gerald S. TAYLOR, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1999.

Filed Feb. 1, 2000.

---

Calvin R. Koons, Deputy Atty. Gen., Harrisburg, for appellants.

Richard Wile, Pittsburgh, for appellee.

Ellen M. Viakley, Deputy Dist. Atty., Pittsburgh, for Com., participating party.

Before CAVANAUGH, DEL SOLE, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, MUSMANNO, ORIE MELVIN, and LALLY–GREEN, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we determine whether the Commonwealth of Pennsylvania, Department of Transportation (Penn-DOT), may properly refuse to produce accident reports and other records in response to a court order in a criminal prosecution where the materials to be produced are privileged under certain provisions of the Motor Vehicle Code. *See* 75 Pa.C.S. §§ 3741–3755. The trial court concluded that the privilege did not protect the materials from disclosure in a criminal action because the materials in question are demonstrably relevant to the defendant's culpability as charged in the underlying information. Consequently, the court ordered PennDOT to produce the materials. We affirm the trial court's order. Notwithstanding *the* statutory protection of such materials from unsupervised "discovery," *see* 75 Pa.C.S. § 3754(b), disclosure subject to judicial scrutiny under the provisions of a court order in a criminal action does not violate either the plain language of the statute or the policy underlying its enactment. Consequently, we hold that PennDOT must produce "in-depth accident investigations and safety reports and information, records and reports used in their preparation," *see* 75 Pa.C.S. § 3754, when the trial court orders such production, with appropriate safeguards, in a criminal action.

¶ 2 This appeal arises out of a criminal prosecution commenced by the District Attorney of Allegheny County (the Commonwealth) against defendant Gerald Taylor. The Commonwealth charged Taylor with, *inter alia,* vehicular homicide and driving under the influence in connection with the death of victim Larry McDonald, Jr. On May 15, 1996, Tayor's vehicle struck Mc-Donald's vehicle head-on when Taylor crossed into a lane of oncoming traffic on Ohio River Boulevard near the McKees Rocks Bridge in the City of Pittsburgh. McDonald died as a result of injuries sustained in the impact.

¶ 3 Subsequent to the accident, in 1997, PennDOT engaged a contractor to widen the section of road where the accident occurred and to install concrete barriers between the opposing lanes of traffic. Taylor asserts that these post-accident improvements suggest a pre-existing defect in the design and construction of the roadway, the existence of which decreases his culpability in the underlying collision and McDonald's resulting death. To advance this theory, Taylor's counsel retained an expert witness who opined that he could not attribute causation without reference to the construction and design records of

the accident site. Consequently, Taylor requested that PennDOT produce construction and design records both pre-dating and post-dating the collision as well as records of sixteen other traffic mishaps that occurred at that location in 1995 and 1996. PennDOT declined to produce any records other than those detailing the 1997 improvements. Accordingly, Taylor petitioned the trial court to issue a subpoena *duces tecum* directing production, *inter alia,* of the following documents:

> Accident investigations and/or safety studies prepared, conducted and/or performed by or for the Department of Transportation with respect to segments 20 through 30 and 21 through 31 of Ohio River Boulevard, State Route 65, preparatory to the award of Department of Transportation contract no. 111492, which investigations and/or studies were "in-depth" within the meaning of 75 Pa. C.S. § 3754(b).

> Reports submitted to the Department of Transportation pursuant to 75 Pa.C.S. § 3751(a), pertaining to motor vehicle accidents that occurred during 1995 and 1996 on segments 20 through 30 and 21 through 31 of Ohio River Boulevard, State Route 65, which reports were used in the preparation of an "in depth" accident investigation and/or safety study within the meaning of 75 Pa.C.S. § 3754(b).

Motion for Issuance of Subpoena Duces Tecum, 3/3/98, Schedule, ¶¶ 4, 2, R.R. at 14. The trial court judge, the Honorable John A. Zottola, granted Taylor's motion and ordered PennDOT to produce the documents. Since there was personal injury litigation pending against PennDOT, brought by the Estate of Larry McDonald, the court ordered that the documents produced be used "only for purposes connected with the preparation and presentation of the defense to the charges against Defendant in this case." Order of Court, 3/9/98, at 2. The court ordered, in addition, that:

> Defendant and counsel for Defendant may disclose such in-depth accident analysis and safety study to [any expert consultant] only after such expert has agreed not to utilize such analysis and study for any purpose other than the preparation and presentation of the defense to the charges against Defendant in this case.

*Id.* The trial court denied PennDOT's motion to quash the subpoena, but granted its petition to certify the matter for appellate review pursuant to 42 Pa.C.S. § 702(b).

¶ 4 On appeal, a panel of this Court affirmed the trial court's order, concluding that the public policy the legislature sought to protect in promulgating section 3754 would not be compromised by disclosure of the materials sought by the subpoena. *See Commonwealth of Pennsylvania, Dep't of Transp. v. Hall,* 1999 PA Super 174. Judge Del Sole filed a Concurring and Dissenting Opinion concurring in the Majority's decision to affirm the trial court's order, but disagreeing with the Majority's analysis. Judge Del Sole concluded that only those materials containing opinion evidence were subject to protection under section 3754 and suggested that the matter would be properly remanded to the trial court for determination of which materials expressed opinions or conclusions made by PennDOT or its agents.

¶ 5 Subsequently, we granted reargument before the Court en banc. PennDOT raises the following question for our review:

> Whether a Defendant in a criminal proceeding may compel production of PennDOT in-depth accident investigations and safety studies which are protected from discovery by statute[?]

Brief for Appellant at 4.

¶ 6 The starting point for our analysis is an examination of the right we are to protect—the right of a defendant to secure materials, held by a government agency, for use in the defendant's criminal defense where those materials might reasonably

bear upon the defendant's culpability as charged in the underlying information. Both in his brief and at oral argument, Taylor has urged us, in considering his discovery right, to determine the impact both of the due process clause found in Section 1 of the Fourteenth Amendment of the United States Constitution, and the "law of the land" clause found in Article 1, Section 9 of our Pennsylvania Constitution. However, it is a cardinal principle of jurisprudence that where a decision can be had on other than constitutional grounds, the court should decide the case on the nonconstitutional grounds. *See Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549, 568–69, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); *In re Fiori*, 543 Pa. 592, 600, 673 A.2d 905, 910 (1996); *Commonwealth v. Crisp*, 441 Pa.Super. 171, 657 A.2d 5, 8 (1995); *Wertz v. Chapman Township*, 709 A.2d 428, 431 (Pa.Cmwlth.1998), *aff'd* 559 Pa. 630, 741 A.2d 1272 (1999). Because we can decide this case by applying established principles of statutory construction and carefully weighing the provisions of the Vehicle Code here before us, we need not determine whether section 3754 of the Vehicle Code is unconstitutional when applied to the facts of this case.

¶ 7 We turn, then, to PennDOT's contentions on appeal. PennDOT argues that the materials it withheld from Taylor are protected by a statutory privilege from disclosure under section 3754(b) of the Motor Vehicle Code. Brief for Appellant at 9. Section 3754(b) provides generally that "[i]n-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be discoverable or admissible as evidence." PennDOT contends that this section provides an absolute privilege from disclosure and places the materials in question beyond the reach of the trial court's order. *See* Brief for Appellant at 11 (quoting *Commonwealth v. Moore*, 526 Pa. 152, 159, 584 A.2d 936, 940 (1991)) ("[I]t should be readily apparent that the general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential.").

¶ 8 Our Supreme Court has admonished that evidentiary privileges, such as that asserted by PennDOT, are held in disfavor and may be applied only for limited purposes under closely circumscribed conditions. *See Commonwealth v. Stewart*, 547 Pa. 277, 282, 690 A.2d 195, 197 (1997) (affirming trial court's refusal to quash subpoena directing production of records of Roman Catholic Diocese where subject matter of records was not within the scope of the statutory clergy-communicant privilege).

'[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' Thus courts should accept testimonial privileges 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'

*Stewart*, 547 Pa. at 282, 690 A.2d at 197 (internal citations omitted). Consequently, though our standard of review of matters of law is plenary, we must construe narrowly the provisions of any privilege that operates to hamper a party's access to information bearing on matters in litigation before a court of law. *Id.* We have held that a criminal defendant's right to access information protected by a privilege depends upon the scope of the privilege. *Commonwealth v. Eck*, 413 Pa.Super. 538, 605 A.2d 1248, 1251 (1992). Our Supreme Court has recognized that the scope of a privilege is limited where the purpose for which the privilege was created is similarly limited. *See Stewart*, 547 Pa. at 287, 690 A.2d at 200 (concluding that scope of clergy-communicant privilege covered only communications between communicant and clergy in the role of *confessor* or *spiritual counselor* because statute creating privilege applied to clergyman "who while in

the course of his duties has acquired information from any person secretly or in confidence").

¶ 9 Following careful study of section 3754, we cannot accept PennDOT's premise that the privilege this statute creates is an absolute privilege against all forms of disclosure. Such an assumption ignores the limitations of the statute's purpose clearly expressed in the statutory language, and is not supported by the cases on which PennDOT relies. Moreover, section 3754 does not purport to limit the authority of courts of law to order disclosure. Consequently, we hold that section 3754 provides a limited privilege against discovery where necessary to serve the stated objectives of the statute; it does not provide an absolute bar to disclosure in a criminal prosecution.

¶ 10 Section 3754 provides, in its entirety, as follows:

### § 3754. Accident prevention investigations

(a) **General rule.**—The department, in association with the Pennsylvania State Police, may conduct in-depth accident investigations and safety studies of the human, vehicle and environmental aspects of traffic accidents for the purpose of determining the causes of traffic accidents and the improvements which may help prevent similar types of accidents or increase the overall safety of roadways and bridges.

(b) **Confidentiality of reports.**—In-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be discoverable nor admissible as evidence in any legal action or other proceeding, nor shall officers or employees or the agencies charged with the development, procurement or custody of in-depth accident investigations and safety study records and reports be required to give depositions or evidence pertaining to any-

thing contained in such in-depth accident investigations or safety study records or reports in any legal action or other proceeding.

75 Pa.C.S. § 3754.

¶ 11 As is evident on the face of the statute, section 3754 is composed of two subsections, both of which apply specifically to "in-depth accident investigations and safety studies." Clearly, both subsections address the same subject matter. Under provisions of the Statutory Construction Act of 1932, when two such "[s]tatutes or parts of statutes ... relate to the same persons or things or to the same class of persons or things," they are in *pari materia* and must be construed together as a single provision. *See* 1 Pa.C.S. § 1932(a), (b). *See also Commonwealth v. Adamo*, 431 Pa.Super. 529, 637 A.2d 302, 305 (1994).

¶ 12 PennDOT argues, and we agree, that the object of this section is "to effect a safe and efficient system of motor vehicle transportation in the Commonwealth" by providing its officers and employees "an unbiased, honest, and accurate body of information regarding motor vehicle accidents." Brief for Appellant at 16 (quoting *Mayfield v. PennDOT*, 23 Pa. D. & C.3d 79 (C.C.P. Fayette County 1982)). The plain language of section 3754(a) demonstrates the legislature's desire to improve traffic safety by enhancing PennDOT's access to information. Section 3754(b) reflects the legislature's desire to enhance the quality of PennDOT's information by encouraging candor among PennDOT employees, thus limiting their prospective involvement in litigation surrounding the information in their custody. Reading the two subsections of the statute together, we conclude that the protections created by section 3754(b) exist to serve the purposes enunciated in section 3754(a). Section 3754(b) does not state an independent objective. Rather, its provisions seek to assure fulfillment of the objective stated in section 3754(a). Accordingly, the pro-

tections that section 3754(b) provides may be given effect only to the extent necessary to promote the purpose enunciated in section 3754(a). Simply stated, the scope of the evidentiary privilege established by section 3754 is limited.

¶ 13 Upon scrutiny of the record before us, we fail to discern how the purpose of section 3754, to provide PennDOT "an unbiased, honest and accurate body of information regarding motor vehicle accidents," see Brief for Appellant at 16, is adversely impacted by the conditional disclosure ordered in this criminal action. As described above, the information subject to production was specified in detail by the trial court, limited to one specific date (12/4/92), and specific numbered segments (segments 20 through 30 and 21 through 31) of a specific state road (Pennsylvania Route 65). Additionally, the court's order restricted the persons to whom the information might be made available and, crucially, the purpose for which they might use the information ("preparation and presentation of the defense to the charges against Defendant in this case"). We find no basis on which to conclude that such limited information, subject to such highly restricted use, violates the purpose of section 3754 as set out in section 3754(a). Accordingly, we find no occasion for application of the protections provided by section 3754(b) and thus, no violation of its terms. Consequently, we conclude that Taylor's request for information and the trial court's order fall outside the scope of the limited privilege section 3754 provides.

¶ 14 PennDOT argues that, notwithstanding the statute's undisputed ban on discovery and use of such information in civil proceedings, the objective, and hence, the protections of section 3754 remain implicated in criminal matters. PennDOT argues:

> [A]s a practical matter, once documents are disclosed, the confidentiality which the legislature intended is irretrievably lost and there is no knowing where the disclosed documents will end up. If the

materials find their way into the hands of an expert witness, for example, the expert could rely on them in forming his opinions, even if the documents themselves would not be admissible in court.

Brief for Appellant at 16. We find no merit in this contention, first, because PennDOT fails to describe how unauthorized access by an expert witness might effect the "unbiased, honest and accurate body of information regarding motor vehicle accidents" that section 3754 seeks to assure. Secondly, we reject PennDOT's argument because it relies on the implicit assumption that, notwithstanding any safeguards applied in the court's order, counsel or the experts they retain will violate the order and disseminate the privileged information in contempt of court. We find these suppositions wholly unsubstantiated.

¶ 15 Additionally, we find no support for PennDOT's argument in the cases on which it relies. Each such case involved a disclosure that impugned an absolute statutory privilege or the specific purpose underlying a limited privilege. See Moore, 526 Pa. at 158–59, 584 A.2d at 939–40 (concluding that disclosure to Commonwealth of victim's record of sexually transmitted disease did not advance the purpose of Disease Prevention and Control Law of 1955, 35 P.S. § 521.15, because victim's diseased condition was already known); V.B.T. v. Family Servs. of W. Pa., 705 A.2d 1325, 1330 (Pa.Super.1998), aff'd, 556 Pa. 430, 728 A.2d 953 (1999) (concluding that confidentiality provision of Protection from Abuse Act, 23 Pa.C.S. § 6116, created absolute privilege against all forms of disclosure); Commonwealth v. Patosky, 440 Pa.Super. 535, 656 A.2d 499, 502 (1995) (concluding that criminal defendant's request for victim's psycho-therapeutic records fell directly within scope of psychiatrist-patient privilege, 42 Pa.C.S. § 5944). PennDOT's reliance on Commonwealth v. Counterman, 553 Pa. 370, 719 A.2d 284 (1998), is similarly misplaced. See Counterman, 553 Pa. at 391–92, 719 A.2d at 294–95 (affirming trial court's denial of

criminal defendant's request for wife's psychiatric records where defendant provided no evidence that such records existed). As we have determined that section 3754 does not create an absolute privilege and the disclosure at issue here does not implicate the purpose of the limited privilege section 3754 provides, we find these cases inapposite.

¶ 16 For the foregoing reasons, we affirm the Order of March 9, 1998, denying PennDOT's Motion to Quash Subpoena Duces Tecum.

¶ 17 Order **AFFIRMED**.

¶ 18 DEL SOLE, J., files a Concurring & Dissenting Opinion, which ORIE MELVIN, J., joins.

DEL SOLE, J., concurring and dissenting.

¶ 1 I join the Majority in so far as it permits the enforcement of Taylor's subpoena to obtain factual information contained in PennDOT's investigative files. However, I disagree that opinion information in these same files is discoverable in this case.

¶ 2 The Majority concludes that the restrictions imposed by the trial court on disclosure of information met the purpose of § 3754 and consequently, there is "no violation of its terms." Majority Opinion at 631. While I readily agree that the trial court imposed restraints on dissemination of materials during pre-trial preparation, the Majority does not address the potential effect of disclosure during trial. One can easily foresee a defense expert during direct or cross-examination, keeping in mind that PennDOT is not a party in this criminal case, disclosing information the Majority believes is protected by the trial court order. Therefore, I conclude that the application of § 3754 must be considered.

¶ 3 Initially, accepting PennDOT's argument that § 3754 is designed to provide for uninhibited discourse among PennDOT employees and its experts, disclosure of factual information does not impact on this purpose. As a result, I do not find § 3754 applies to factual information in Penn-DOT's possession even if it first appeared in an "in depth" study.

¶ 4 Given my conclusion that § 3754 is designed to protect opinions contained in such a study, I would remand this matter to the trial court for a determination of and exclusion of opinions. Appellee does not suggest, nor can I discern, the relevancy of PennDOT's in-house opinions to the charge of vehicular homicide. Since it is Appellee who seeks the information, he must establish relevancy. Absent a showing of relevancy, I would prohibit disclosure of opinions and save for another day the question of applicability of § 3754.

¶ 5 By permitting disclosure of factual evidence, Appellee's expert will be able to provide an informed opinion. Therefore, before beginning a constitutional analysis involving the application of § 3754 to criminal proceedings, I would require an initial showing of relevancy between the charges filed and the information sought. There being none in this case, I would vacate the trial court order and remand for that court to conduct an *in camera* review and exclude all non-factual materials.

¶ 6 ORIE MELVIN, J., joins.